IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

Patricia Gleaton,                          )
                                           )
                    Plaintiff,             )        CA No. 9:06-619-HMH-GCK
                                           )
            vs.                            )        **OPINION & ORDER**
                                           )
Linda S. McMahon,[1] Commissioner of      )
Social Security,                           )
                                           )
                    Defendant.             )

        This matter is before the court with the Report and Recommendation of United States

Magistrate Judge George C. Kosko, made in accordance with 28 U.S.C. § 636(b) and Local

Civil Rule 73.02 of the District of South Carolina.[2]  Patricia Gleaton ("Gleaton") seeks

judicial review of the Commissioner of Social Security's ("Commissioner") denial of her

application for disability insurance benefits ("DIB") under Title II of the Social Security Act.

In his Report and Recommendation, Magistrate Judge Kosko recommends affirming the

Commissioner's decision.  Gleaton objects to the Report and Recommendation.  For the

_____

        [1]  On January 20, 2007, Linda S. McMahon ("McMahon") became the Acting
Commissioner of Social Security.  Therefore, McMahon is substituted for Jo Anne B.
Barnhart pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

        [2]  The recommendation has no presumptive weight, and the responsibility for making a
final determination remains with the United States District Court.  See Mathews v. Weber,
423 U.S. 261 (1976).  The court is charged with making a de novo determination of those
portions of the Report and Recommendation to which specific objection is made.  The court
may accept, reject, or modify, in whole or in part, the recommendation made by the
Magistrate Judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1) (West
Supp. 2006).

reasons stated below, the court adopts the Magistrate Judge's Report and Recommendation and affirms the Commissioner's decision.

## I. Factual and Procedural Background

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 22-25), and summarized as follows. At the time of the ALJ's decision on August 17, 2005, Gleaton was a forty-nine-year-old woman with a high-school education. (Id. at 22.) Her past relevant employment includes a position as a meter reader and service representative for South Carolina Electric and Gas. (Id. at 84, 258.) Gleaton alleges that she has been disabled since February 24, 1999, due to back and knee pain which render her unable to "stand, sit, walk, or concentrate to hold down a job." (Id. at 83.)

On May 13, 2003, Gleaton filed an application for DIB. (Id. at 82.) The application was denied initially and on reconsideration. (R. at 53-54, 59-63, 66-68.) After a hearing held May 31, 2005, the ALJ issued a decision dated August 17, 2005, denying benefits. (Id. at 30.) On January 5, 2006, the Appeals Council denied Gleaton's request for review. (Id. at 11.) Gleaton filed the instant action on January 24, 2006.

## II. Report and Recommendation

In her brief to the Magistrate Judge, Gleaton argued that the ALJ erred in the following ways: (1) the ALJ improperly evaluated the opinions of Gleaton's treating physicians under the treating physician rule; (2) the ALJ failed to correctly assess Gleaton's credibility; and (3) the ALJ failed to properly explain his residual functional capacity findings. (Pl.'s Br. 9, 19, 22.)

2

The Magistrate Judge found that the ALJ's decision was supported by substantial evidence and that the ALJ had not erred on any of Gleaton's three grounds.  Accordingly, the Magistrate Judge recommended affirming the Commissioner's decision to deny Gleaton benefits.  (Report and Recommendation 27.)

### III. Discussion of the Law

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  <u>See</u> <u>Myers v. Califano</u>, 611 F.2d 980, 982 (4th Cir. 1980).  In other words, the court "must uphold the factual findings of the [Commissioner only] if they are supported by substantial evidence *and* were reached through application of the correct legal standard." <u>Craig v.</u> <u>Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."  <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).  "Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted).  Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the Commissioner's finding even if the court disagrees with it.  <u>See</u> <u>id.</u>

### B. Objections

Gleaton filed objections to the Magistrate Judge's Report.  First, Gleaton objects to the Magistrate Judge's conclusion that the ALJ properly assessed Dr. Edmund Gaines ("Dr.

3

Gaines") and Dr. John Bradley's ("Dr. Bradley") opinions.  (Objections 1, 3.)  Second,

Gleaton objects to the Magistrate Judge's finding that the ALJ properly evaluated Gleaton's

credibility.  (Id. 4.)  Third, Gleaton objects to the Magistrate Judge's finding that the ALJ

adequately identified Gleaton's limitations in the residual functional capacity ("RFC")

assessment and that the ALJ adequately specified the evidence which he found supported

Gleaton's RFC.  (Id. 5.)

### 1.  Dr. Gaines' Opinion

Dr. Gaines performed a consultative examination of Gleaton on November 20,

2003.  (R. at 184-88.)  Dr. Gaines diagnosed Gleaton with generalized osteoarthritis and

scoliosis.  In addition, he noted Gleaton's history of left knee surgeries and possible

psychological issues.  (Id. at 187.)  Based on his examination, Dr. Gaines opined that Gleaton

had "some discomfort" resulting from her scoliosis and prior knee surgeries, but noted that "her

symptoms seemed to be out of proportion to the findings on this physical examination."  (Id. at

188.)  Dr. Gaines opined that Gleaton would not be "a candidate to any occupation, which will

require prolonged walking, standing, stooping, lifting, bending or climbing." ( Id.)  However, he

noted that if her psychological condition permitted, Gleaton could "be a candidate for the

sedentary occupation with breaks every two hours."  (Id.)

The ALJ assigned "little weight" to Dr. Gaines' opinion limiting Gleaton to a sedentary

occupation for the following reasons: (1) Dr. Gaines' opinion that Gleaton was limited to a

sedentary occupation contradicted his statement that her symptoms seemed to be

disproportionate to her impairments, (2) Dr. Gaines failed to indicate what physical findings

would limit Gleaton to sedentary work, (3) Dr. Gaines' opinion was inconsistent with the overall

4

evidence of record, and (4) Dr. Gaines was a one-time examining physician.  (R. at 24.)  The court agrees with the Magistrate Judge that the ALJ did not err by assigning little weight to Dr. Gaines' opinion regarding Gleaton's RFC.

The ALJ correctly noted that during Dr. Gaines' examination, Gleaton "demonstrated a normal gait, full range of motion of the bilateral upper extremities with good and equal strength . . . [,] slight decrease in flexion of the hips, knees, and lumber and cervical spine," and that her "[s]traight leg raise was negative bilaterally in the supine and sitting position."  (Id. at 24.)  Given Dr. Gaines' physical findings indicating largely-normal functioning, the ALJ's reasonably determined that Dr. Gaines' opinion that Gleaton was limited to sedentary work was too restrictive.  (Id.); see Craig, 76 F.3d at 590 (upholding an ALJ's rejection of a physician's opinion because it was inconsistent with the physician's treatment notes).  The ALJ's determination was further supported by his observation that Dr. Gaines' opinion was inconsistent with the other medical evidence in the record which indicated clinical observations largely within normal parameters.  (R. at 181, 229, 234.)  In addition, the ALJ properly considered Dr. Gaines' statement that Gleaton's "symptoms seemed to be out of proportion to the findings on this physical examination," and that Dr. Gaines only examined Gleaton once.  (Id. at 188.)  Based on the foregoing, the ALJ properly rejected Dr. Gaines' opinion limiting Gleaton to sedentary work.

Further, Gleaton does not object to the Magistrate Judge's finding that even if the court were to find that the ALJ erred in rejecting Dr. Gaines' opinion, this would not support reversal of the Commissioner's decision.  The vocational expert ("VE") testified that there were jobs in the national economy Gleaton could perform if she were limited to sedentary work.  (Id. at 260.)

Therefore, Gleaton would not have been found disabled even if the ALJ had adopted Dr. Gaines' opinion that Gleaton was limited to sedentary work.

### 2. Dr. Bradley's Opinion

Dr. Bradley performed a consultative mental status evaluation of Gleaton on December 29, 2003. Dr. Bradley's diagnostic impression was that Gleaton suffered from recurrent, moderate to severe major depressive disorder. (Id. at 196.) As a result, Dr. Bradley opined that "[i]t is very doubtful that [Gleaton] could be gainfully employed at this time." (Id.)

The ALJ assigned "little weight" to Dr. Bradley's opinion that Gleaton was incapable of working for the following reasons: (1) Dr. Bradley's conclusion was inconsistent with his own analysis of Gleaton's symptoms; (2) Dr. Bradley's conclusion was inconsistent with that of Gleaton's treating physician, Dr. Philip P. Claytor ("Dr. Claytor"); (3) Dr. Bradley noted that Gleaton had a history of depression, but she had a "long history of substantial employment" despite her ongoing depression; and (4) Dr. Bradley only examined Gleaton once. (R. at 24-25.)

The Magistrate Judge found that substantial evidence supported the ALJ's decision to discount Dr. Bradley's opinion that Gleaton was incapable of working. (Report and Recommendation 22-24.) Gleaton objects that the ALJ impermissibly substituted his own judgment for that of Dr. Bradley. (Objections 3-4.)

Opinions of disability are reserved for the Commissioner, and "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant] is disabled." 20 C.F.R. § 404.1527(e)(1). Thus, the ALJ's rejection of Dr. Bradley's opinion that Gleaton's mental impairments would prevent her from working was proper so long as it was supported by substantial evidence.

6

The Court agrees with the Magistrate Judge that the ALJ properly rejected Dr. Bradley's opinion that Gleaton could not work.  First, the ALJ correctly noted that Dr. Bradley's conclusion was inconsistent with his mental status findings.  (R. at 25); see Craig, 76 F.3d at 590.  Dr. Bradley noted on examination that Gleaton was cooperative, alert and oriented to time, space, and person; displayed no indications of perceptual disorders, delusions, phobias, obsessions, compulsions, or homicidal thinking; and was able to communicate appropriately and comprehend instructions.  (R. at 195.)  In addition, Dr. Bradley noted that Gleaton's "thinking was clear and coherent and at an appropriate rate."  (Id.)  While Gleaton's "attention and concentration skills were below normal[, h]er memory appeared to be adequate for the details of her life."  (Id. at 195-96.)  Further, Gleaton's "fund of knowledge and use of vocabulary in her speech suggested that [she] is functioning at a normal level of intelligence," and her judgment and insight appeared adequate.  (Id. at 196.)  In fact, the only findings which would support Dr. Bradley's conclusion that Gleaton could not work were his observations of her depressed mood and below-normal concentration skills.  (Id. at 195.)  The Magistrate Judge correctly notes that these observations alone would not constitute substantial evidence to support a determination of disability.  (Report and Recommendation 22.)

Dr. Bradley's conclusion was also inconsistent with the other medical evidence on record regarding Gleaton's mental impairments.  Dr. Claytor opined on September 10, 2003, that Gleaton did not "exhibit any limitation in function due to a mental condition."  (R. at 179); see 20 C.F.R. § 404.1527(d)(2) (giving more weight to opinions from treating physicians).  In addition, Dr. Bradley properly relied in part on the fact that Gleaton had "a history of depression going back many years," which would have included time periods when Gleaton was gainfully

employed.  See Craig, 76 F.3d at 596 n.7.  Based on the above evidence contradicting Dr. Bradley's conclusion that Gleaton could not be gainfully employed, the court agrees with the Magistrate Judge that the ALJ properly rejected Dr. Bradley's conclusion.

### 3. Gleaton's Credibility

Third, Gleaton objects to the Magistrate Judge's conclusion that the ALJ properly evaluated Gleaton's credibility.  (Objections 4).  Subjective complaints of pain are evaluated under the test articulated in Craig, 76 F.3d at 594-95.  "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process."  Id. at 594.  "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*."  Id. (internal quotation marks omitted).  The ALJ must "expressly consider the threshold question of whether [Gleaton] . . . demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges."  Id. at 596.  Only after a claimant has met the threshold showing of a medical impairment likely to cause pain must "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work . . . be evaluated."  Id. at 595.  In making these determinations,

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that the "individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2 (1996).

Magistrate Judge Kosko concluded that the ALJ properly evaluated Gleaton's credibility regarding the severity of her symptoms because "the objective medical evidence did not support [Gleaton's] complaints of disabling pain." (Report and Recommendation 24.) In support of her objection, Gleaton argues that she "met the objective evidence hurdle . . . , and therefore her credibility determination should not have been based on an evaluation of whether her subjective symptoms were fully supported by objective evidence." (Objections 4.)

The ALJ found that Gleaton's allegations regarding the severity of her symptoms were "less than fully credible." (R. at 26.) He based this conclusion on "the lack of frequent emergency room visits or hospitalization for pain, the paucity of objective findings of significant abnormality, and the lack of substantiation of the asserted degree of impairment by the clinical findings." (Id.) The court agrees with the Magistrate Judge that substantial evidence supported the ALJ's determination that "the objective medical evidence did not support Gleaton's complaints of disabling pain." (Report and Recommendation 24.) As discussed above and noted by the ALJ, the findings of Dr. Gaines and Dr. Bradley, along with the other medical evidence of record, did not support a finding of disabling conditions. (R. at 181, 184-88, 194-96, 229, 234); see 20 C.F.R. § 416.929(a) (requiring "medical signs and laboratory findings which establish that [the claimant] ha[s] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [the claimant is] disabled). In addition, the ALJ properly noted the lack of frequent treatment for pain. See SSR No. 96-7p, 1996 WL 374186,

at *7 (failure to seek medical treatment can be considered in evaluating a claimant's subjective allegations of pain).

In her objections, Gleaton fails to point to any objective evidence supporting her allegations of disabling symptoms or indicating that she suffered from a condition which could have reasonably resulted in her alleged symptoms. (Objections 4-5.) Gleaton merely asserts that the ALJ's findings of severe impairments and significant limitations necessarily lead to a finding that Gleaton met the burden of producing objective evidence indicating a condition which could have reasonably resulted in her alleged symptoms. (Id.) However, the ALJ's acknowledgement that Gleaton experienced some restrictions and impairments does not necessarily lead to the conclusion that the objective evidence supported Gleaton's allegations of disabling pain. Therefore, this objection is without merit. Based on the foregoing, the court finds that the ALJ properly evaluated Gleaton's credibility regarding her symptoms.

### 4. RFC Assessment

Fourth, Gleaton objects to the Magistrate Judge's determination that the ALJ outlined Gleaton's RFC with appropriate specificity. (Objections 5.) In addition, Gleaton asserts that "specificity is required in both the RFC and mental impairment findings of the ALJ, and the ALJ did not provide such specificity as to what evidence he based his findings on in the hearing decision." (Id. 6)

Social Security Ruling ("SSR") 85-15 required the ALJ to include "[a]ny impairment-related limitations created by an individual's response to demands of work . . . in the RFC assessment." 1985 WL 56857, at *6 (1985). Gleaton argues that the ALJ erred by failing to include in her RFC specific limitations regarding Gleaton's ability to stand and walk.

10

The court finds that even if the ALJ had included specific limitations regarding Gleaton's ability for prolonged walking and/or standing, the ALJ's decision would have been the same. Based on Gleaton's RFC, which did not include a walking or standing limitation, the ALJ found that Gleaton could perform light work. As the ALJ noted, "[i]f someone can do light work, we determine that she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods." (R. at 27.) Sedentary work only requires walking and standing occasionally. 20 C.F.R. 220.132. Accordingly, if the ALJ had specifically limited Gleaton's ability to walk and/or stand in the RFC, the ALJ's finding that Gleaton could perform sedentary work would not have changed. As discussed above, Gleaton does not object to the Magistrate Judge's determination that Gleaton "would still not be disabled with a[n] RFC for sedentary work." (Report and Recommendation 22.) Therefore, even if the ALJ erred by failing to include a specific limitation regarding Gleaton's ability for prolonged walking and/or standing, that error was harmless.

In addition, Gleaton objects that the ALJ failed to specify on what evidence he based the RFC and the mental impairment findings. This objection is without merit. SSR 96-8p requires the ALJ to "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. 1996 WL 374184, at *7 (1996). The ALJ addressed in detail the reasons for Gleaton's RFC. As described above, the ALJ performed an in-depth analysis of Gleaton's medical history and testimony and gave specific reasons for adopting or rejecting each piece of evidence. (R. at 23-36.) Therefore, the ALJ described the evidence supporting his findings with adequate specificity. Based on the foregoing, the court adopts Magistrate Judge Kosko's Report and Recommendation affirming the Commissioner's decision.

11

Therefore, it is

**ORDERED** that the Commissioner's decision to deny Gleaton benefits is affirmed.

**IT IS SO ORDERED**.


                                    s/Henry M. Herlong, Jr.
                                    United States District Judge

Greenville, South Carolina
February 23, 2007